UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

JON E. QUICK,                                    Civil No. 05-859 (JRT/JJG)

                 Petitioner,

          v.                                     **REPORT AND RECOMMENDATION**

LYNN DINGLE, Warden,

                 Respondent.

_____

          Jon E. Quick, Minnesota Correctional Facility - Stillwater, 970 Pickett Street North, Bayport, Minnesota, 55003, Petitioner, pro se.

          Kimberly Parker, Assistant Minnesota Attorney General, Suite 1800, 445 Minnesota Street, St. Paul, Minnesota, 55101, for Respondent.

_____

JEANNE J. GRAHAM, United States Magistrate Judge

          This matter is before the undersigned Magistrate Judge of the District Court on the petition of Jon E. Quick for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a response, (Docket Nos. 7-9), contending that the petition should be dismissed.[1]  The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be DENIED, and this action should be DISMISSED WITH PREJUDICE.

_____

          [1]  Petitioner has filed a "Motion For Change Of Name On Respondent," (Docket No. 12), asking that the named Respondent be changed to Lynn Dingle, (erroneously identified as "Lynn Dingel" in Petitioner's submission), because she is now the Warden at the institution where Petitioner is confined.  That request has not been opposed, and the Court agrees that Petitioner's current custodian should be the named Respondent.

## I. BACKGROUND

In October 2001, a Minnesota state court jury found Petitioner guilty of first degree murder for killing a man named Justin Mueller, the boyfriend of Petitioner's estranged wife, Diane Quick.  Petitioner has never denied that he killed Mueller, but he has consistently claimed that he did not act with premeditated intent, and that he is guilty of no more than manslaughter.

The circumstances surrounding Mueller's murder were summarized by the Minnesota Supreme Court, in the decision on Petitioner's direct appeal, as follows:

> "In May 2000, Diane told Jon she wanted a separation and in early June, Jon moved out of the family home.... Jon did not want the separation and asked Diane to go to marriage counseling, but she refused.  Despite Jon's efforts at reconciliation, Diane filed for dissolution of the marriage on June 15, 2000. Diane also applied for, and was granted, a restraining order....
>
> Two months after Jon moved out, Diane began dating Justin Mueller, a good friend of her brother.  Diane and Mueller's relationship soon became serious and Mueller was at Diane's home virtually every day.  At some point, Jon became aware that Diane and Mueller were spending a considerable amount of time together, but he contends he was not aware of the seriousness of their relationship....
>
> On September 5, Jon made arrangements with Diane to go to the house to pick up a locket he had given her.  Diane told Jon to come after 7:30 p.m. because she had to take one of the children to a school activity.  When Jon arrived, Diane was not home and Mueller was mowing the lawn.  Upset, Jon had some words with Mueller.  He then went to the school and left a note on Diane's car that said, 'Di, I'll bet you thought you were cute having me stop by while Justin was mowing your lawn. Well he's still alive though I don't know why, but you can go 2 hell.'  Jon said he left the note to scare and upset Diane by making her think he had beat up Mueller.  Shortly thereafter, Jon visited Diane's brother in Fargo and told him that upon seeing Mueller mowing the lawn, he could have grabbed the rifle from his trunk and shot Mueller.  At the time of the incident, Jon did have a rifle and ammunition in the trunk of his car, but Diane's

2

brother did not think Jon was serious when he made that comment about Mueller."

State v. Quick, 659 N.W.2d 701, 707 (Minn. 2003).

On the evening of September 14, 2001, Petitioner returned home from a parenting class and found several messages from his wife on his answering machine. When he called his wife back, she told him that she had several visitors, but she refused to identify them. Petitioner suspected that Mueller might have been one of those visitors, and he decided to drive to his wife's home to see whether his suspicions were correct. The Minnesota Supreme Court's opinion provides the following description of what happened next:

"Jon drove around the block by Diane's home and saw that Mueller's car was parked in her driveway. Jon observed a neighbor in the neighbor's backyard and drove around the block a second time because he did not want anyone to know that he was there. He then parked in Diane's driveway and saw that all the lights were off in the house. He took the loaded .22 rifle, which was still in its case, from the back seat of his car and approached the house. [Footnote omitted] Jon testified that at this point he wanted to scare and humiliate Mueller and planned to take Mueller four or five miles out of town and make him walk back.

Jon tried to enter the house through the back door, but it was locked. He next tried a basement window and was able to gain entrance. He then climbed the stairs to the first floor, unlocked the back door, took off his shoes, and took the rifle out of the case. He testified that the house was so quiet that it made him think he was jumping to conclusions, so he thought about leaving through the back door, but he just could not go. Jon further testified that he took his shoes off so that he could get back out of the house without anyone knowing he was there if there was no truth to his suspicions. He walked through the house and started up the stairs to the second floor where the master bedroom was. About three-fourths of the way up the stairs, Jon said he heard Diane giggle and he testified that he recognized the giggle as one he knew from their intimate moments together. He then ran up to the top of the stairs, turned on the light, and opened the door to the master bedroom.

Diane and Mueller were in bed together and Jon testified that Mueller was naked. Mueller got out of bed and moved toward Jon who was out in the

3

hallway.   Jon then fired the rifle five times.   At trial, Jon stated that Mueller lunged toward him and tried to grab the rifle and he just reacted....        An Ada police officer and a Norman County sheriff's deputy responded to [a] 911 call [made by Diane].   Shortly after they arrived, Diane came running out of the house carrying the rifle and yelling for help.   While the deputy locked the rifle in the trunk of his squad car, the police officer went into the house with Diane and observed Mueller's body lying in the upstairs hallway covered with a blanket. The officer checked Mueller for a pulse and breathing and found none....

Jon told the deputy he was sorry and asked, 'Is he dead? Did I kill him?' Jon also said 'I told her to wait until after the divorce.'   The deputy then arrested Jon and took him to the sheriff's department....

Id. at 707-08.

The Minnesota Bureau of Criminal Apprehension ("BCA") was called to the scene, and an agent asked Petitioner for permission to search his car, as well as the room where he had been staying since his separation.   Petitioner signed a written waiver granting such permission, and his car and room were searched.   Several boxes of rifle ammunition were found in Petitioner's car.

"Dr. Susan Roe, the medical examiner, conducted the autopsy on Mueller.  She concluded that Mueller had been shot five times--once in the left shoulder, once by the right armpit, twice in the back, and once in the forehead.   Roe noted a grazing wound on the back surface of Mueller's right hand and scrapes and abrasions on Mueller's elbows and knees that were consistent with him falling to the floor.   While the shots to the shoulder and armpit hit no vital organs, both shots to the back went through vital organs.   Roe stated that Mueller would have been able to move for only a brief period of time after sustaining the wounds to his back before he lost consciousness.   The bullet to the forehead fragmented, with part of the bullet going into the brain. Roe stated that the shot to the forehead was fatal and Mueller would have lost consciousness immediately."

Id. at 709.

Based on an examination of Mueller's wounds, Dr. Roe concluded that Mueller was within two feet of Petitioner's rifle when he was shot.   Roe also noted that the bullet wounds

were inflicted "from up to down," which indicated that Petitioner must have been shooting

down at Mueller.  A BCA agent who examined blood patterns at the scene deduced that the

higher of the two wounds on Mueller's back was inflicted while Mueller was still on his feet,

while the lower wound was inflicted while Mueller was lying down.  Id.

Petitioner was indicted for first degree murder, and his case went to trial in October

2001.  Petitioner presented a "heat of passion" defense – admitting that he had killed Mueller,

but denying that he had acted with the premeditated intent required for a first degree murder

conviction.  The jury was given instructions on both first degree murder and first degree

manslaughter, but Petitioner ultimately was found guilty of first degree murder.  He was

sentenced to life in prison.

After Petitioner was convicted and sentenced, he filed a direct appeal with the

Minnesota Supreme Court.[2]  His appellate counsel filed a brief that raised two claims:  (1)

that there was insufficient evidence to support the jury's first degree murder verdict, and (2)

that Petitioner was deprived of his constitutional right to present a defense, because the trial

court prohibited him from introducing certain testimony from three prospective witnesses – two

marriage counselors and an attorney.

Several additional claims were raised in a separate pro se brief that Petitioner himself

filed with the Supreme Court: (1) that he received ineffective assistance of counsel at trial,

because his attorney committed several alleged mistakes, (2) that he was denied a fair trial

because of prosecutorial misconduct, (3) that he was denied a fair trial because the trial judge

---

[2] Under Minnesota law, appeals in first degree murder cases are taken directly to the
State Supreme Court, rather than the Minnesota Court of Appeals.  Minn.Stat. § 632.14.

was anxious to complete the trial, (4) that the jury instructions were too confusing, (5) that the jury selection process was unfair and resulted in a biased jury, (6) that some of the evidence used against him was obtained by means of an allegedly illegal search and seizure, and (7) that his wife should not have been allowed to testify against him at trial.

The Minnesota Supreme Court considered and rejected all of Petitioner's claims, and his first degree murder conviction was affirmed on direct appeal. State v. Quick, supra.

In early 2004, Petitioner filed a state post-conviction motion, which raised three new challenges to his conviction: (1) that he received ineffective assistance of counsel at trial, because his attorney did not gather and present evidence confirming that he had attended a parenting class on the night of Mueller's murder, (2) that he should be granted a new trial so that he would have an opportunity to argue that his blood sugar level affected his behavior on the night of the murder, and (3) that he should be granted a new trial so that he would have an opportunity to explain how his religious upbringing affected his displays of emotion.

Petitioner's post-conviction motion was summarily denied, because the trial court found that all of Petitioner's claims were raised, or could have been raised, on direct appeal. The Minnesota Supreme Court later affirmed the trial court's ruling on Petitioner's post-conviction motion, agreeing that all of Petitioner's post-conviction claims were procedurally barred. Quick v. State, 692 N.W.2d 438 (Minn. 2005).

Petitioner then filed his current habeas corpus petition. The instant petition lists ten grounds for relief, all of which were previously presented to the Minnesota Supreme Court, either in Petitioner's direct appeal, or in his subsequent appeal in the post-conviction proceedings. For the reasons discussed below, the Court finds that Petitioner cannot be

granted habeas corpus relief on any of his current claims.

## II. PROCEDURALLY DEFAULTED CLAIMS (GROUNDS FOUR, SIX, EIGHT AND TEN)

### A. Applicable Legal Rules

When a state appellate court has expressly declined to address a particular claim on the merits because the claim was not raised in accordance with applicable state procedural rules, the claim is considered to be "procedurally defaulted" for federal habeas corpus purposes.  As the Eighth Circuit Court of Appeals explained in Hall v. Delo, 41 F.3d 1248, 1250 (8th Cir. 1994), "[a] federal claim has not been fairly presented to the state courts," and is therefore procedurally defaulted, "when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural rule." See also McCall, 114 F.3d 754, 757 (8th Cir. 1997) ("a federal court may usually only consider 'those claims which the petitioner has presented to the state courts in accordance with state procedural rules'"), quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.), cert. denied, 517 U.S. 1215 (1996); Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir. 1992) ("[o]rdinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state courts in accordance with state procedural rules").

A claim that has been procedurally defaulted in the state courts will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  The "fundamental miscarriage of justice" exception is

available only upon a "showing, based on <u>new evidence</u>, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  <u>Brownlow v. Groose</u>, 66 F.3d 997, 999 (8th Cir. 1995), <u>cert</u>. <u>denied</u>, 516 U.S. 1161 (1996) (emphasis added), <u>quoting</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).  In other words, the petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer some new evidence which affirmatively demonstrates that he must truly be innocent of the crime for which he was convicted.[3]

The rules governing procedural default have been summarized by the United States Supreme Court as follows:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a

---

[3]  The Court of Appeals has further explained that –

"The actual innocence exception is concerned with claims of actual, not legal innocence.  <u>Anderson v. United States</u>, 25 F.3d 704, 707 (8th Cir. 1994).  It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception.  Indeed, a credible claim of actual innocence 'requires [a] petitioner to support his allegation of constitutional error with new reliable evidence....' [<u>Schlup</u>, 513 U.S. at 324.]  Examples of evidence which may establish factual innocence include credible declarations of guilt by another, <u>see</u> <u>Sawyer v. Whitley</u>, 505 U.S. 333, 340... (1992), trustworthy eyewitness accounts, <u>see</u> <u>Schlup</u>, 513 U.S. [at 324]... and exculpatory scientific evidence."

<u>Pitts v. Norris</u>, 85 F.3d 348, 350-51 (8th Cir.), <u>cert</u>. <u>denied</u>, 519 U.S. 972 (1996).  For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" <u>Johnson v. Norris</u>, 170 F.3d 816, 817 (8th Cir. 1999), quoting <u>Armine v. Bowersox</u>, 128 F.3d 1222, 1230 (8th Cir. 1997) (<u>en</u> <u>banc</u>), <u>cert</u>. <u>denied</u>, 523 U.S. 1123 (1998).

fundamental miscarriage of justice."
Coleman, 501 U.S. at 750.

### B. Petitioner's Procedurally Defaulted Claims

In this case, Respondent contends that the three claims that Petitioner raised for the first time in his state post-conviction motion, which are listed as Grounds Four, Six and Ten in the current petition, have been procedurally defaulted. The Court agrees. The Court also finds that Ground Eight has been procedurally defaulted, even though that claim was raised in Petitioner's direct appeal.

Petitioner presented three claims for relief in his state post-conviction motion, and he has repeated each of those claims in his current federal habeas corpus petition. In the first of those claims, (Ground Six), Petitioner contends he received ineffective assistance of counsel at trial, because his attorney did not present available evidence that would have corroborated his testimony that he had attended a parenting class on the evening of the murder.[4] In the second such claim, (Ground Four), Petitioner contends that he should be granted a new trial, so he can present evidence showing that his "temperament" at the time of Mueller's murder was affected by his blood sugar level. In the third such claim, (Ground Ten), Petitioner contends he should be granted a new trial, so he can present evidence showing that he was raised in "a mind-controlling, psychologically and spiritually abusive 'cult.'" (Petition, p. 6B, ¶ 12.J.)

The Minnesota Supreme Court refused to consider these three claims on the merits,

---

[4] Petitioner claims that evidence showing he attended a parenting class would have refuted the prosecution's contention that he had surreptitiously visited his wife's home earlier during the evening of the murder.

9

because they had not been presented in accordance with a well-established state procedural rule, which requires state criminal offenders to raise all available claims for relief on direct appeal.  As the State Supreme Court explained in Petitioner's second appeal, "once a direct appeal has been taken, 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.'"  Quick v. State, 692 N.W.2d at 439, quoting State v. Knaffla, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). See also McCall, 114 F.3d at 757, ("Minnesota law provides that once the petitioner has directly appealed his sentence 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief'"), quoting Knaffla, supra.

In sum, the Minnesota state courts expressly declined to reach the merits of the claims listed at Grounds Four, Six and Ten of the instant petition, because those claims were barred by a well-established state procedural rule.  Therefore, those claims have been procedurally defaulted for federal habeas corpus purposes.

The Court also finds that Ground Eight of the instant petition, entitled "Court created prejudicial bias," must also be dismissed due to procedural default – even though that collection of claims was raised in Petitioner's direct appeal.  At Ground Eight, Petitioner contends that his conviction should be overturned because the trial court judge did not give proper jury instructions, committed several alleged errors during the jury selection process, and was too anxious to complete the trial as quickly as possible.  Although Petitioner raised all three of these arguments in his pro se brief on direct appeal, the Minnesota Supreme Court refused to consider them on the merits.  Instead, the State Court concluded that all three of

Petitioner's "Court created judicial bias" claims had been "waived," because they had not been properly preserved and presented for appellate review under Minnesota law. State v. Quick, 659 N.W.2d at 718.

Because Petitioner's so-called "Court created prejudicial bias" claims were not preserved and presented for appellate review in the manner prescribed by state law, and the Minnesota Supreme Court therefore declined to address those claims on the merits, the claims have been procedurally defaulted for federal habeas corpus purposes. Moss v. Lockhart, 971 F.2d 77, 81 (8th Cir. 1992). See also Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004) ("[a] federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds"), cert. denied, 126 S.Ct. 41 (2005).

Petitioner may believe that the Minnesota state courts misapplied the State's procedural rules to his claims currently listed as Grounds Four, Six, Eight and Ten, but that is a matter that cannot properly be considered here, because "[a] federal court may not re-examine a state court's interpretation and application of state law." Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994). In Murray v. Hvass, 269 F.3d 896, 899 (8th Cir. 2001), cert. denied, 535 U.S. 935 (2002), the Eighth Circuit repeated that "it is not the province of a federal court to decide whether a matter ought to be considered procedurally defaulted under state law." This rule was also followed in Owsley v. Bowers, 234 F.3d 1055, 1058 (8th Cir. 2000), cert. denied, 534 U.S. 1121 (2002). In that case, a state appellate court had ruled that a claim was not properly raised and preserved for direct appeal. The Eighth Circuit rejected the suggestion that the state court had erred, explaining that –

11

"We are obliged to respect the conclusion of the Missouri Supreme Court here. A federal court conducting habeas corpus review must ordinarily refrain from reviewing any issue that a state court has already found to be defaulted on an adequate and independent state-law basis."

Id. at 1058. In May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001), the Court of Appeals once again rejected a habeas petitioner's challenge to the validity of a state procedural bar, pointing out that "[w]e may not disturb a state court decision interpreting state law on habeas review... and thus we reject [the petitioner's] contention that he did not default his three ineffective assistance of counsel claims." See also Clemons, 381 F.3d at 751 ("federal courts do not look at whether state courts have correctly applied their own procedural rules[;] [t]hey simply determine whether those procedural rules were applied to bar the claim"). It is therefore clear that this Court cannot overturn the Minnesota Supreme Court's determination that four of Petitioner's current claims were barred by the state's procedural rules.

C. Cause and Prejudice

Having determined that Petitioner's Fourth, Sixth, Eighth and Tenth grounds for relief have been procedurally defaulted, the only remaining issue to be resolved, (with regard to these particular claims), is whether Petitioner has shown cause and prejudice, or actual innocence, to excuse his procedural default. The Court finds that Petitioner is unable to satisfy either the cause and prejudice standard or the actual innocence standard with regard to any of his four procedurally defaulted claims.

In order to satisfy the "cause" requirement, a prisoner must show that some external impediment prevented him from presenting his claims to the state's highest court in a timely and procedurally proper manner. Coleman, 501 U.S. at 753 ("'cause' under the cause and

prejudice test is something <u>external</u> to the petitioner, something that cannot fairly be attributed to him... [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available... or that some interference by officials made compliance impracticable'"), (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)) (emphasis in the original).   In this case, Petitioner has not identified any "external cause" that could excuse his failure to properly present his defaulted claims in the state courts.

Petitioner has alleged only that he was not actually aware of, (or perhaps did not fully appreciate), the matters on which some of his procedurally defaulted claims are based. However, he has not identified any <u>external</u> impediment that prevented him from raising his procedurally defaulted claims in a proper and timely manner.  Indeed, three of the four barred claims are based on matters that must have been better known to Petitioner than to anyone else – i.e., (1) his attendance at a parenting class on the evening of the murder, and how that fact might have been established, (2) his blood sugar level on the evening of the murder, and (3) the nature of his religious upbringing.   Petitioner certainly has not shown that the prosecution, or any other external factor, prevented him from knowing about these matters in time to raise them in a procedurally proper fashion.   Therefore, Petitioner cannot satisfy <u>Coleman</u>'s cause and prejudice requirement.

Because Petitioner has failed to satisfy the cause component of the cause and prejudice requirement, it is unnecessary to discuss the prejudice component. <u>Ashker v. Class</u>, 152 F.3d 863, 871 (8th Cir. 1998) (when petitioner "has not shown adequate cause to overcome the procedural bar... we need not consider the issue of actual prejudice"); <u>Sweet v. Delo</u>, 125 F.3d 1144, 1151 (8th Cir. 1997), <u>cert</u>. <u>denied</u>, 523 U.S. 1010 (1998) (same).

Petitioner also does not qualify for the "actual innocence" exception, because he has offered no new evidence to affirmatively demonstrate that he did not commit the crime for which he was convicted. Petitioner has not presented any clear and convincing proof that, in fact, he did not commit the crime found by the original jury. At most, Petitioner has presented some arguments that <u>might</u> affect the deliberations of a new jury. Petitioner's purported "new evidence" might be relevant, and it might even have some arguably exculpatory value, but that is not enough. To qualify for the actual innocence exception, Petitioner would have to present some compelling new evidence, which would conclusively establish that the original verdict simply could not be correct. This he has not done. <u>See</u> <u>Cox v. Burger</u>, 398 F.3d 1025, 1031 (8th Cir.) (successful demonstrations of actual innocence are "rare and limited," because the actual innocence exception is "permitted only for 'truly persuasive demonstrations of actual innocence,' based on reliable new evidence which shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence'"), <u>cert</u>. <u>denied</u>, 126 S.Ct. 93 (2005) (citations omitted). Therefore, Petitioner's procedurally defaulted claims cannot be entertained under the actual innocence exception.

## III.  FOURTH AMENDMENT CLAIM (GROUND TWO)

At Ground Two of the present petition, Petitioner contends that law enforcement officials searched his home, his car, and his wife's home, without valid consent and without a valid warrant. He claims that his conviction should be set aside because the allegedly illegal searches and seizures, and the subsequent admission of the seized evidence at his trial, violated his rights under the Fourth Amendment to the Constitution.

14

Petitioner's Fourth Amendment claims are barred by the Supreme Court's decision in <u>Stone v. Powell</u>, 428 U.S. 465 (1976).  There, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Id</u>. at 482. The holding of <u>Stone v. Powell</u> is clearly applicable here.

Petitioner does not contend that he was deprived of a full and fair opportunity to raise his Fourth Amendment claims in his state court proceedings.  Indeed, Petitioner had at least two such opportunities -- during a pre-trial omnibus hearing before the trial court, and again in his direct appeal.  It appears that both the trial court and the Minnesota Supreme Court provided Petitioner ample opportunity to present his Fourth Amendment claims.  Both of those courts considered Petitioner's claims, and both courts decided the search and seizure issues on the merits.  <u>See</u> <u>State v. Quick</u>, 659 N.W.2d at 718-20.

While Petitioner obviously disagrees with the outcome of the state court proceedings, he does not deny that they occurred, nor does he deny that they gave him an opportunity to litigate his current Fourth Amendment claims.  Thus, the resolution of Petitioner's second ground for relief is simple and straightforward.  Because Petitioner received a full and fair opportunity to present his current Fourth Amendment arguments in the Minnesota state courts, <u>Stone v. Powell</u> precludes this Court from entertaining those arguments in a federal habeas corpus proceeding.  Ground Two of the current petition must therefore be summarily denied.

## IV.  "MARITAL PRIVILEGE" CLAIM (GROUND THREE)

In Ground Three of the petition, Petitioner contends that his conviction should be

overturned because his wife was "improperly allowed to testify at trial." He contends that none of his wife's testimony should have been admitted because it was "privileged and protected."

Although Petitioner has not cited any legal authority in support of this claim, it appears that this claim must be based on the so-called "marital privilege" set forth at Minn. Stat § 595.02, subd. 1(a).[5]  In any event, it is clear that Petitioner's challenge to his wife's testimony cannot be based on the United States Constitution, because the Constitution itself does not afford a criminal defendant any special protection against incriminatory evidence provided by his or her spouse.  Labbe v. Berman, 621 F.2d 26, 27 (1st Cir. 1980) ("[a]n accused has no federal constitutional right to bar a spouse from testifying at his trial").  See also Crow v. Eyman, 459 F.2d 24, 25 (9th Cir.) ("[a]pplying the spousal privilege is a matter of state law, which is not subject to review by this court on a petition for a writ of habeas corpus"), cert denied, 409 U.S. 867 (1972); Hawkins v. United States 358 U.S. 74, 78 (1958) (implying that marital privilege rules are not grounded on constitutional principles, inasmuch as "Congress

---

[5]  The relevant part of this statute provides that

"[a] husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage."

The Minnesota Supreme Court has observed that this "statute provides two distinct privileges:  (1) the privilege to prevent a spouse from testifying against the other during the marriage; and (2) the privilege to prevent a spouse from testifying at any time concerning confidential interspousal communications made during the marriage."  State v. Palubicki, 700 N.W.2d 476, 483 (Minn. 2005).

or this Court, by decision or under its rule-making power,... can change or modify the rule where circumstances or further experience dictates").

A federal district court can grant a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In other words, federal habeas corpus relief is available only for violations of federally protected rights. Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam) ("[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension").

Petitioner's current "marital privilege" claim, (Ground Three of his petition), makes no reference to the federal Constitution or any federal law. Instead, it clearly appears that this claim is based solely on a Minnesota state statute. The United States Supreme Court has repeatedly held, however, that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67 (1991). Because no federal constitutional dimension can be found in Petitioner's third ground for relief, that claim cannot be entertained in federal court.[6]

## V.  REMAINING CLAIMS (GROUNDS ONE, FIVE, SEVEN, AND NINE)

---

[6] Even if Petitioner meant to argue that his federal constitutional rights were violated because his wife was allowed to testify against him, (despite the fact that no such allegation actually appears in his petition), that claim still could not be considered here because it was not raised as a constitutional claim in the state courts. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam) ("[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution").

A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern this Court's substantive review of Petitioner's non-defaulted habeas corpus claims.  The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts.  The Supreme Court recognized that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways.  First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."

Id. at 405.

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Id. at 413.

The Court also explained that

> "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was <u>objectively unreasonable</u>.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."

<u>Id</u>. at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record.  When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence."  <u>Lee v. Gammon</u>, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims.  Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts.  Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in <u>Williams</u>.

B.  <u>Insufficiency of the Evidence (Ground One)</u>

At Ground One of the current habeas corpus petition, Petitioner claims that there was insufficient evidence to support the jury's first degree murder verdict.  When a prisoner raises

an "insufficiency of the evidence" claim, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The Minnesota Supreme Court faithfully applied this standard of review to Petitioner's insufficiency of the evidence claim on direct appeal,[7] and Petitioner has not suggested that the State Court misunderstood or misstated the applicable legal standard in any way.

After setting forth the appropriate standard of review, the Minnesota Supreme Court reiterated the elements of first degree premeditated murder under Minnesota law.[8] The Court

_____

[7] The Minnesota Supreme Court expressed the applicable standard of review as follows:

> "In reviewing a claim of insufficiency of the evidence, the scope of review is limited to ascertaining whether, based on the evidence presented at trial, the jury could have reasonably concluded that the defendant is guilty of the offense. State v. Vick, 632 N.W.2d 676, 690 (Minn.2001). In doing so, we view the evidence 'in the light most favorable to the jury's verdict and assume that the jury believed the state's witnesses and disbelieved the defendant's witnesses.' Id. We will uphold the jury's verdict if, giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty. State v. Johnson, 568 N.W.2d 426, 435 (Minn.1997).

State v. Quick, 659 N.W.2d at 709-10.

[8] The Minnesota Supreme Court summarized the prerequisites of Petitioner's offense as follows:

> "To be guilty of first-degree premeditated murder, [Petitioner] must have caused the death of Mueller with premeditation and with intent to effect his death. Minn.Stat. § 609.185(a)(1) (2002). Premeditation means to 'consider, plan or prepare for, or determine to commit, the act referred to prior to its commission.' Minn.Stat. § 609.18 (2002). 'A finding of premeditation does not require proof of extensive planning or preparation to kill, nor does it require any

also acknowledged that under Minnesota law "an intentional killing may be mitigated from first-degree murder to first-degree manslaughter if the defendant acted in the heat of passion," and the Court then explained how that could occur.  State v. Quick, 659 N.W2d at 711.  After setting forth the applicable standard of review, the Supreme Court carefully explained why the record in this case includes sufficient evidence to support Petitioner's conviction for first degree premeditated murder.

The Minnesota Supreme Court pointed out several key pieces of evidence that lent support to the jury's verdict, including evidence which showed the following: (1) that Petitioner had previously told his wife he did not know why Mueller "was still alive;" (2) that Petitioner had told his brother-in-law that he had a gun in his car, and that he could have shot Mueller while he was mowing the lawn; (3) that Petitioner drove to his wife's house late at night, for no apparently benign purpose, suspecting that Mueller might be there; (4) that after seeing Mueller's car in the driveway, Petitioner broke into his wife's home carrying a loaded rifle; (5) that Petitioner removed his shoes so that his presence in the home would be more difficult to detect; (6) that Petitioner fired five shots into the body of the naked and unarmed victim; and (7) that Petitioner later told the police that he had  warned his wife "to wait until after the divorce," implying that the murder was a calculated consequence of his wife's failure to heed

---

specific period of time for deliberation.' State v. Cooper, 561 N.W.2d 175, 180 (Minn.1997).  Premeditation is a state of mind and, therefore, generally proved through circumstantial evidence of the 'defendant's words and actions in light of the totality of the circumstances.' State v. Brocks, 587 N.W.2d 37, 42 (Minn.1998).  '[T]he evidence as a whole may support a finding of premeditation even if no single piece of evidence standing alone would be sufficient.' State v. Moore, 481 N.W.2d 355, 361 (Minn.1992).

State v. Quick, 659 N.W.2d at 710.

his warning.  Id. at 711-12.

Petitioner has failed to explain how the State Court's disposition of his insufficiency of the evidence claim is contrary to, or involved an objectively unreasonable application of, any United States Supreme Court precedent.  The Minnesota Supreme Court used the correct legal standard for reviewing an insufficiency of the evidence claim, and that Court applied that standard in a reasoned and rational manner.  Therefore, this Court concludes that Petitioner is not entitled to a writ of habeas corpus on his insufficiency of the evidence claim.

### C.  Ineffective Assistance of Counsel Claim (Ground Five)

Petitioner also claims that he was deprived of his constitutional right to effective assistance of counsel at trial because (1) his attorney did not poll the jury after the verdict, (2) his attorney did not attempt to introduce testimony from Petitioner's sister "pertaining to [a] phone call on [the] evening of September 14, 2000," (3) his attorney "[d]id not thoroughly pursue [a] medical defense, (4) his attorney did not pursue evidence showing that Petitioner had been attending a parenting class, and that Petitioner had been affected by "abusive aspects of [a] cult," (5) his attorney did not object to "poor jury instructions," and (6) his attorney "[d]id not expose [the] weakness of [the] state's investigation."  (Petition, p. 6A, ¶ 12.e.)

Before considering the merits of Petitioner's ineffective assistance of counsel claims, it bears repeating that he is not entitled to de novo review of these claims in federal court.  As discussed above, AEDPA "'mandates a deferential review of state court decisions.'"  Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001), quoting James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999), cert. denied, 528 U.S. 1143 (2000).  It does not matter whether the federal court agrees or disagrees with the state court's conclusion; a writ of habeas corpus can be

granted only if the state court's resolution of the petitioner's claim "cannot reasonably be justified under existing Supreme Court precedent." <u>Boyd</u>, 274 F.3d at 500 (citations omitted).

In this case, the Minnesota Supreme Court correctly recognized that "[t]o succeed on a claim of ineffective assistance of counsel, a defendant must affirmatively prove [1] that his counsel's representation fell below an objective standard of reasonableness, and [2] but for counsel's errors, there is a reasonable probability that the results of the proceeding would have been different." <u>State v. Quick</u>, 659 N.W.2d at 717. This statement of the law is fully consistent with the two-prong test prescribed by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).

The State Court's recitation of the <u>Strickland</u> criteria shows that the proper legal standards were applied to Petitioner's ineffective assistance of counsel claims. <u>See Williams</u>, 529 U.S. at 406 (when a state court applies a <u>Strickland</u> analysis to an ineffective assistance claim, the court has acted in accordance with -- not contrary to -- established federal law). Therefore, the only issue to be resolved here is whether Petitioner has demonstrated that the Minnesota Supreme Court's ruling on his ineffective assistance claims involves an "unreasonable application of clearly established Federal law" to the facts of his case. 28 U.S.C. § 2254(d)(1). <u>See Williams</u>, 529 U.S. at 417 (Rehnquist, C.J., concurring in part and dissenting in part) ("[g]enerally, in an ineffective-assistance-of-counsel case where the state court applies <u>Strickland</u>, federal habeas courts can proceed directly to 'unreasonable application' review").

The Minnesota Supreme Court considered each of Petitioner's ineffective assistance claims in light of the <u>Strickland</u> standard. The Court initially determined that: "Four of the

23

claims raised by [Petitioner] – failure to call any character witnesses, failure to use statements from his sister, failure to pursue a medical defense, and failure to expose weaknesses in the state's investigation – represent trial tactics and therefore will not be reviewed for competence." State v. Quick, 659 N.W.2d at 717. This ruling is fully consistent with the United States Supreme Court's explication of the first prong of the Strickland test. See Strickland, 466 U.S. at 681, 690 ("[b]ecause advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment," and thus "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

The State Supreme Court further determined that Petitioner was not entitled to relief based on his claims that his attorney failed to obtain "necessary discovery," and failed to object to "poor jury instructions." Those claims were rejected by the State Court, because Petitioner did not adequately explain how the discovery process, and the jury instructions, allegedly were flawed, nor did he explain how those alleged flaws supposedly affected the outcome of the trial. The burden of satisfying both prongs of the Strickland test rests with Petitioner, and that burden cannot be satisfied by merely asserting, in conclusory fashion, that defense counsel should have done something different. See Estes v. United States, 883 F.2d 645, 647 (8th Cir.1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence); United States v. Serpa, No. 95-2699 (8th Cir. 1996), 1996 WL 164422 (unpublished opinion) at *1 ("ineffective-assistance claims... fail because they are merely general and conclusory allegations"). Therefore, this Court does not find the State

Court's disposition of these two ineffective assistance claims to be "objectively unreasonable."

Finally, the Minnesota Supreme Court rejected Petitioner's claim based on his attorney's failure to poll the jury, because Petitioner failed to show any prejudice. Petitioner has, in fact, expressly acknowledged that his attorney's failure to poll the jury "did not affect the verdict." (Petitioner's memorandum in support of petition, [Docket No. 2], p. 10.) Therefore, it was entirely appropriate for the State Court to conclude that Petitioner could not satisfy Strickland's prejudice requirement with regard to this claim.

D. Prosecutorial Misconduct Claim (Ground Seven)

At Ground Seven, Petitioner contends that his conviction should be vacated due to "prosecutorial misconduct." He claims that the prosecutor was aware of evidence that would have shown that Petitioner had attended a parenting class on the night of the murder, but the prosecutor failed to disclose such evidence. He also claims that the prosecutor mischaracterized some of his pre-trial statements, by suggesting to witnesses and the jury that Petitioner had said he had "killed" the victim, rather than "shot" him.

**(i) Failure to Disclose evidence**

The federal Constitution's disclosure requirements, which emanate from Brady v. Maryland, 373 U.S. 83 (1963), obligate prosecutors to provide exculpatory evidence to defendants. In order to prevail on a Brady duty-to-disclose claim, Petitioner must first identify some specific evidence that was known to the prosecution before his trial, but did not become known to him until after the trial. United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996). In addition, Petitioner must show that there is a "reasonable probability" that the

outcome of the trial would have been different, if the exculpatory evidence in question had been disclosed to the defense before or during the trial.  Kyles v. Whitley, 514 U.S. 419, 434 (1995), citing United States v. Bagley, 473 U.S. 667, 678 (1985).

In this case, Petitioner claims that the prosecutor was constitutionally obligated to disclose certain evidence showing that he had attended a parenting class on the night of Mueller's murder.  However, Petitioner has not demonstrated that the evidence in question was unknown to him until after the trial.  Because Petitioner has not shown any failure to disclose evidence unknown to him, he is unable to sustain his first claim of prosecutorial misconduct.  See Gonzales, 90 F.3d at 1368 ("the government need not disclose evidence available to the defense from other sources or evidence already possessed by the defendants").

### (ii) Mischaracterization of evidence

Improper remarks by a prosecutor will not be viewed as a violation of a defendant's constitutional rights unless they are "so egregious that they fatally infected the proceedings and rendered [the Petitioner's] entire trial fundamentally unfair."  Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985).  See also Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th Cir. 1998) (prosecutorial misconduct does not merit habeas corpus relief unless the prosecutor committed an error that effectively eliminated the defendant's due process right to a fair trial), cert. denied, 525 U.S. 1073 (1999), citing Darden v. Wainwright, 477 U.S. 168, 181 (1986).

"'[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.... Rather, the 'relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"

Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996), cert. denied, 520 U.S. 1109 (1997), quoting Darden, 477 U.S. at 181. "Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial -- i.e., that absent the alleged impropriety, the verdict probably would have been different.'" Mack, 92 F.3d at 643, (emphasis added), quoting Jones v. Jones, 938 F.2d 838, 844-45 (8th Cir. 1991). See also Clemons, 381 F.3d at 757 ("[r]elief is available only if 'the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial'"), quoting James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999).

In this case, the Minnesota Supreme Court correctly determined that Petitioner "must show that prosecutorial misconduct occurred and the misconduct is 'so serious and prejudicial that [his] right to a fair trial is denied.'" State v. Quick, 659 N.W.2d at 718 (citation omitted). This is a perfectly accurate description of the applicable constitutional standard. Therefore, Petitioner can be granted a writ of habeas corpus on his prosecutorial misconduct claim only by establishing that the State Court applied the law in an objectively unreasonable manner. Petitioner is unable to satisfy that burden. Indeed, the Court finds no reason to believe that the prosecutor's alleged mischaracterization of the evidence had any significant bearing on the outcome of this case. Because Petitioner has not shown that the prosecutor's remarks probably altered the outcome of his trial, he cannot be granted a writ of habeas corpus on his prosecutorial misconduct claim.

E. Preclusion of Evidence Claim (Ground Nine)

At Ground Nine of the petition, Petitioner claims that he was deprived of his

constitutional right to present evidence in support of his defense, because three prospective witnesses were precluded from testifying at his trial. Those three witnesses are identified as an attorney and two marriage counselors. Petitioner's current petition and supporting memorandum do not describe the testimony that the excluded witnesses purportedly would have given, or why such testimony supposedly would have been significant. However, the Minnesota Supreme Court's opinion on Petitioner's direct appeal sheds some additional light on the matter.

According to the Supreme Court's decision, Petitioner apparently believes that the excluded witnesses would have offered testimony that somehow would have "negate[d] the state's claim that he was angry over the situation [i.e., his wife's relationship with the victim] and planned and premeditated the shooting." State v. Quick, 659 N.W.2d at 713. He further believes that "testimony from these disinterested persons would [have] help[ed] to put his whole situation into perspective." Id. However, the trial court found that the witnesses' testimony would not have been sufficiently relevant to warrant admission at trial, and the Minnesota Supreme Court upheld that determination on direct appeal. Id. at 714 ("there are a number of factors supporting the district court's conclusion that the excluded testimony is not relevant").

"It is well established that the Fourteenth Amendment, along with the Sixth Amendment, guarantee criminal defendants the opportunity to present a complete defense, including the right to present relevant testimony." Boysiewick v. Schriro, 179 F.3d 616, 620 (8th Cir. 1999), cert. denied, 528 U.S. 1141 (2000). "The Constitution does not, however, guarantee that criminal defendants may call every witness they choose." Khaalid v. Bowersox, 259 F.3d 975,

978 (8th Cir. 2001), cert. denied, 535 U.S. 1021 (2002), citing United States v. Scheffer, 523

U.S. 303, 308 (1998).  "An accused 'does not have an unfettered right to offer testimony that

is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'"

Khaalid, 259 F.3d at 978, quoting Taylor v. Illinois, 484 U.S. 400, 410 (1988).

"A state court's evidentiary ruling is a matter of state law, and [federal courts] may

examine the ruling in a habeas proceeding only to determine whether the asserted error

denied due process."  Bailey v. Lockhart, 46 F.3d 49, 50 (8th Cir. 1995).  See also Wood v.

Lockhart, 809 F.2d 457, 459 (8th Cir. 1987) ("[q]uestions relating to the admissibility of

evidence are matters of state law and are generally not cognizable in an action for habeas

corpus"), citing Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898

(1976).  "To establish a due process violation warranting federal habeas relief, [a state

prisoner] must prove that the [evidentiary] error was 'so gross'... 'conspicuously prejudicial'...

or otherwise of such magnitude that it fatally infected the trial and failed to afford [the

petitioner] the fundamental fairness which is the essence of due process."  Kerr v. Caspari,

956 F.2d 788, 789 (8th Cir. 1992), quoting Rainer v. Department of Corrections, 914 F.2d

1067, 1072 (8th Cir. 1990), cert. denied, 498 U.S. 1099 (1991).  See also Bounds v. Delo,

151 F.3d 1116, 1119 (8th Cir. 1998) (same).

The Eighth Circuit Court of Appeals has observed that "[r]ulings on the admission or

exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation."

Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000).  A habeas petitioner who claims that a

state court evidentiary ruling violated his federal constitutional rights faces a very heavy burden

of persuasion.  "'To carry that burden, the petitioner must show that there is a reasonable

probability that the error complained of affected the outcome of the trial – i.e., that absent the alleged impropriety the verdict <u>probably</u> would have been different.'" <u>Gee v. Groose</u>, 110 F.3d 1346, 1350 (8th Cir. 1997) (emphasis added), quoting <u>Anderson v. Goeke</u>, 44 F.3d 675, 679 (8th Cir. 1995). <u>See</u> <u>also</u> <u>Harris v. Bowersox</u>, 184 F.3d 744, 752 (8th Cir. 1999) (same), <u>cert.</u> <u>denied</u>, 528 U.S. 1097 (2000).

In this case, the Minnesota Supreme Court correctly acknowledged that under the federal Constitution,

> "'every criminal defendant has the right to be treated with fundamental fairness and 'afforded a meaningful opportunity to present a complete defense." <u>State</u> <u>v. Richards</u>, 495 N.W.2d 187, 191 (Minn.1992) (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485... (1984)). The United States Supreme Court has recognized that the right to present a defense encompasses the right to offer the testimony of witnesses so that the defense can present its version of the facts to the jury as well as the state so that the jury can decide where the truth lies. <u>Washington v. Texas</u>, 388 U.S. 14, 19... (1967).

<u>State v. Quick</u>, 659 N.W.2d at 712-13.

The State Supreme Court also correctly noted that

> "[w]hile the right to present witnesses is constitutionally protected, that right is not unlimited. A defendant still "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." <u>Richards</u>, 495 N.W.2d at 195 (quoting <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302... (1973)).

<u>Id</u>. at 713.

In light of this recitation of the applicable law, which is entirely consistent with the Eighth Circuit case law cited above, it cannot be said that the State Court's resolution of Petitioner's "right to present a defense" claim is "contrary to... clearly established Federal law." 28 U.S.C. § 2254(d)(1). To establish that the State Court's application of the law was "objectively

unreasonable," so as to warrant habeas corpus relief, Petitioner would have to show that the outcome of his trial probably would have been different if the trial court had allowed him to introduce the testimony at issue.  See Gee, 110 F.3d at 1350 (habeas petitioner must show that "'there is a reasonable probability that the error complained of affected the outcome of the trial – i.e., that absent the alleged impropriety the verdict probably would have been different'"), quoting Anderson v. Goeke, 44 F.3d at 679 (emphasis added).

The Minnesota Supreme Court pointed out that the excluded evidence at issue was of dubious value to the defense in this case, because it did not shed any meaningful light on Petitioner's state of mind when he murdered Mueller.  As the State Court pointed out,

> "[Petitioner's] state of mind and intentions toward Mueller could have changed substantially between the times he first met with his attorney and marriage counselors and the time of the shooting.  During this time period, he learned more and more about the seriousness of his wife's relationship with Mueller and he began to realize that his marriage was over."

State v. Quick, 659 N.W.2d at 714.

The State Supreme Court also pointed out that (1) the proffered testimony apparently would not have shed any light on Petitioner's feelings about the victim himself, (but only about Petitioner's wife), (2) some of the evidence that Petitioner sought to present from the excluded witnesses was presented to the jury by other witnesses, and (3) some of the testimony that Petitioner sought to present may have actually been more harmful than helpful to the defense, because it would have shown that Petitioner "became more troubled and even angry as he learned more about his wife's relationship with another man."  Id. at 715.

In light of the State Court's observations about the excluded testimony, and Petitioner's inability to offer anything more than pure speculation about the actual exculpatory value of that

31

testimony, the Court cannot conclude that the outcome of Petitioner's trial probably would have been different if such testimony had been admitted.  Therefore, the Petitioner cannot be granted a writ of habeas corpus based on his "preclusion of testimony" claim.

## VI. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Petitioner's "Motion For Change Of Name On Respondent," (Docket No. 12), be granted and that Lynn Dingle be substituted for Dan Ferrise as the named Respondent in this action;

2.  Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be DENIED; and

3.  This action be DISMISSED WITH PREJUDICE.

Dated: January 6, 2006                                    s/Jeanne J. Graham

                                                 _____
                                                 JEANNE J. GRAHAM
                                                 United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by <u>January 26, 2006</u>.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.